# EXHIBIT A

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

April 15 2026 2:34 PM

PIERCE COUNTY CLERK
NO: 26-2-07866-7

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF PIERCE

| | |
|---|---|
| MARIAH MEADE, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PROFUSION COSMETICS CORP.,<br><br>Defendant. | Case No.: _____<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Mariah Meade, on her own behalf and on behalf of others similarly situated, on information and belief except to her own experiences and matters of public record, complains of Defendant Profusion Cosmetics Corp., ("Profusion") as follows:

## I.    INTRODUCTION

1.    In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2.    Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident." RCW

CLASS ACTION COMPLAINT
Page 1

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

19.190.020(1)(b).

3.  Defendant Profusion engages in the precise activity which CEMA prohibits.

4.  Profusion spams Washington consumers, including Plaintiff, with commercial emails featuring subject lines which employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5.  This false urgency wastes consumers' time by enticing them to engage with the defendant's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e.*, *purchase*—is short.

6.  Through this deceptive time-sensitivity, Profusion falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7.  Plaintiff challenges Profusion's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II.    JURISDICTION AND VENUE

8.  The Court has jurisdiction of this case under RCW 2.08.010.

9.  Venue is proper in Pierce County under RCW 4.12.020(3) because Plaintiff's cause of action, or some part thereof, arose in Pierce County.

## III.    PARTIES

10.  Plaintiff Mariah Meade is a resident of Pierce County, Washington.

11.  Defendant Profusion Cosmetics Corp., is a California corporation with its principal address at 5491 Schaefer Ave., Chino, CA 91710.

CLASS ACTION COMPLAINT
Page 2

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

## IV.   FACTUAL ALLEGATIONS

**A.   CEMA protects Washington consumers from deceptive spam emails.**

12.   The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

13.   In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14.   While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15.   The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16.   In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17.   In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18.   Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19.   Consumers therefore routinely "consent" to receive flurries of commercial emails

CLASS ACTION COMPLAINT
Page 3

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

which they did not meaningfully request and in which they have no genuine interest.

20.    This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21.    Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

22.    The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

23.    CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

24.    CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

25.    CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

26.    CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that

CLASS ACTION COMPLAINT
Page 4

contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

27. CEMA's protections do not depend on whether an email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

28. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The subject lines of Profusion's marketing emails make false time scarcity claims.**

29. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 29, at 22.

31. "False or misleading scarcity claims can change the behavior of consumers." *Online Choice Architecture*, *supra* para. 29, at 27.

32. Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary

CLASS ACTION COMPLAINT
Page 5

consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Customer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

33.    False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 29, at 26.

34.    Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

35.    Under time pressure, "consumers might take up an offer to minimize the uncertainty of passing it up." *Id.*

36.    False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

37.    Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

38.    False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

39.    These false time scarcity claims are a staple of the defendant's marketing scheme to compel consumers to purchase its products.

40.    Profusion is a cosmetics brand offering a variety of beauty products and accessories. The company's merchandise is available on its website, profusioncosmetics.com, and

CLASS ACTION COMPLAINT
Page 6

through other retailers.

41.     To advertise its products and encourage purchases from its website, Profusion routinely sends spam emails to consumers. These emails are part of a calculated marketing strategy that Defendant orchestrates in advance to maximize sales by distorting factual information about the duration and availability of its promotions.

42.     **Urgent Spam Emails.** Unfortunately for those recipients, Profusion regularly titles its emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the examples discussed below.

43.     Profusion has tailored its approach to fit a number of offers, including promotion extensions. In these examples, Profusion sends consumers emails to advertise an offer, promotion, or sale. Then, it uses the subject lines of follow-up emails to present the promotional pricing as a scarce or time-limited opportunity. This strategy commands consumers' attention and pressures them to purchase from Profusion's website. Finally, once the originally advertised "deadline" has passed, Profusion knowingly extends the promotion to a new end date.

44.     This misleading marketing strategy allows Profusion to maximize sales during both the initial promotion, as well as the subsequent extension. While Profusion may present these extensions as though they are a favor or unexpected blessing to consumers, they are anything but. By deploying false time pressure with surprise extensions—which are only disclosed once the original promotion has ended—Profusion compels consumers to purchase quickly while withholding terms that consumers need so they can make informed buying decisions. A 2023 holiday promotion provides an apt example of this strategy at work.

45.     On the morning of December 24, 2023, Profusion sent consumers an email with the subject line: " 🎁 35% Off Sitewide - Sales end on 12/26 11:59 PM PST! 😱 🎄 [.]" The email's

CLASS ACTION COMPLAINT
Page 7

titled unambiguously communicated the sale's December 26 deadline, down to the very minute. A graphic within the email explicitly reinforced the stated end date in large text: "GRAND HOLIDAY FINALE: 35% OFF SITEWIDE SALES END ON 12/26 11:59 PM PST!" Immediately below that text, Profusion layered on an additional warning: "LAST CHANCE TO GRAB YOUR HOLIDAY FAVORITES AT UNBEATABLE PRICES."

46.     A single email, however, was not sufficient for Profusion. It sent an email featuring the same content on the afternoon of December 24, 2023, as well, repeating the same subject line and the same warnings provided in the morning transmission. So, in a matter of hours, a single consumer received two emails clearly articulating the limited duration of Profusion's sitewide sale.

47.     Once December 26, 2023, arrived, Profusion continued to present that day as the promotion's deadline. An email sent that morning was titled: " 🎁 LAST DAY! 35% Off Sitewide - Sales end on 12/26 11:59 PM PST! 😱 🎄 [.]" The email repeated the same urgent warnings that appeared in the December 24 email: "GRAND HOLIDAY FINALE: 35% OFF SITEWIDE SALES END ON 12/26 11:59 PM PST!" and "LAST CHANCE TO GRAB YOUR HOLIDAY FAVORITES AT UNBEATABLE PRICES."

48.     Just as it had done on December 24, 2026, Profusion transmitted a second email containing the " 🎁 LAST DAY! 35% Off Sitewide - Sales end on 12/26 11:59 PM PST! 😱 🎄 " subject line on the afternoon of December 26, 2023, as well.

49.     All four emails, however, contained a false deadline within their title. Profusion did not conclude its 35% off sitewide sale on December 26, 2023, despite transmitting at least four subject lines presenting that date as the final opportunity to participate in the promotion. Rather than using its marketing campaign to inform consumers with accurate terms regarding the duration of the sale, Profusion used its emails to urge consumers to purchase from its website by warning

CLASS ACTION COMPLAINT
Page 8

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

them that the offer was coming to an end. To the detriment of consumers, the promotion did not end as Profusion promised.

50.     The following day, December 27, 2023, Profusion confirmed that it had used a false deadline in connection with the sitewide sale. On that date, it sent an email with the subject line: "🚨 Extended by popular demand: Save 35% on EVERYTHING! 🚨 [.]"

51.     Thus, after pelting consumers with at least four emails warning that the sale would end on December 26, 2023, Profusion extended the promotion, thereby proving the falsity of its December 24 and December 26, subject lines. Consumers in receipt of the earlier emails were not at risk of missing the discount/promotion because Profusion did not end the promotion on December 26, as advertised. The false conclusion of the 35% off sitewide promotion is simply one element of Profusion's cohesive marketing strategy meant to compel consumers to purchase items from its website.

52.     By stuffing consumer inboxes with such misinformation, Profusion ensures that email recipients lack the accurate details needed to make educated buying decisions.

53.     As the subject lines of its marketing emails demonstrate, Profusion employs a strategy where it pressures consumers to purchase products from its website by falsely representing the limited availability of its offers.

54.     These examples of Profusion's commercial emails with subject lines containing false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C.      Profusion knows when it sends emails to Washington residents.**

55.     A sophisticated commercial enterprise, like Profusion, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are

CLASS ACTION COMPLAINT
Page 9

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

peculiarly with its knowledge.

56.     First, the sheer volume of email marketing that Profusion engages in put it on notice that Washington residents would receive its emails.

57.     Second, Profusion may obtain location information tied to email addresses when consumers make purchases from Profusion through digital platforms, or otherwise self-report such information to Profusion.

58.     Third, Profusion may obtain location information tied to email addresses by tracking the IP addresses of devices used to open Profusion's emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

59.     Specifically, Profusion appears to use Omnisend to manage its email marketing campaigns. This platform should allow Profusion to access a list of every email address that was sent a marketing email. It should also allow Profusion to determine which email addresses viewed the emails and to produce a list of every link that each mail recipient clicked on.

60.     Fourth, Profusion may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

61.     Fifth, Profusion may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

62.     Sixth, Profusion may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant

CLASS ACTION COMPLAINT
Page 10

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

63.     It is thus highly probable that a seller of Profusion's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D.     Profusion violated Plaintiff's right under CEMA to be free from deceptive commercial emails.**

64.     Profusion has spammed Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA.

65.     For example, Plaintiff received the following emails from Profusion:

   a.   An email sent on December 24, 2023, at 11:00 AM titled: "🎁 35% Off Sitewide - Sales end on 12/26 11:59 PM PST! 😱 🎄 [.]" This email contained a false or misleading subject line sent by Profusion as described above at paragraph 45.

   b.   An email sent on December 24, 2023, at 3:01 PM titled: "🎁 35% Off Sitewide - Sales end on 12/26 11:59 PM PST! 😱 🎄 [.]" This email contained a false or misleading subject line sent by Profusion as described above at paragraph 46.

   c.   An email sent on December 26, 2023, at 10:54 AM titled: "🎁 LAST DAY! 35% Off Sitewide - Sales end on 12/26 11:59 PM PST! 😱 🎄 [.]" This email contained a false or misleading subject line sent by Profusion as described above at paragraph 47.

CLASS ACTION COMPLAINT
Page 11

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

d.    An email sent on December 26, 2023, at 4:55 PM titled: "🎁 LAST DAY! 35% Off Sitewide - Sales end on 12/26 11:59 PM PST! 🙀 🎄 [.]" This email contained a false or misleading subject line sent by Profusion as described above at paragraph 48.

66.    The subject line of these emails are false or misleading in violation of CEMA.

67.    The subject line contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V.    CLASS ALLEGATIONS

68.    Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

69.    Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

70.    The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

71.    Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

72.    The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

CLASS ACTION COMPLAINT
Page 12

73.     There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

74.     Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

75.     Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; has no interest adverse to the Class; and has retained competent counsel extensively experienced in consumer protection and class action litigation.

76.     Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

77.     The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and

CLASS ACTION COMPLAINT
Page 13

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

that Class member's resulting damages.

78.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.

## VI.    CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

79.    Plaintiff incorporates and realleges paragraphs 1–67 above.

80.    CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

81.    Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

82.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

83.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents through "information is available, upon request, from the registrant of the internet domain name contained

CLASS ACTION COMPLAINT
Page 14

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

in the recipient's electronic mail address". RCW 19.190.020(b)(2).

84.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

85.    For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

**Second Claim to Relief**

**Violation of the Consumer Protection Act, RCW 19.86.020**

86.    Plaintiff incorporates and realleges paragraphs 1–67 above.

87.    The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

88.    A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

89.    A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

90.    CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

91.    Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

92.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the

CLASS ACTION COMPLAINT
Page 15

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

meaning of CEMA. RCW 19.190.010(2).

93.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

94.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

95.    For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII.    JURY DEMAND

96.    Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII.    PRAYER FOR RELIEF

Plaintiff asks that the Court:

A.    Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B.    Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C.    Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D.    Award Plaintiff costs of suit, including reasonable attorneys' fees; and

CLASS ACTION COMPLAINT
Page 16

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

E.    Order such further relief the Court finds appropriate.


DATE: April 15, 2026                    Respectfully submitted,

                                        /s/ Samuel J. Strauss
                                        Samuel J. Strauss, WSBA No. #46971
                                        Raina C. Borrelli*
                                        **STRAUSS BORRELLI, LLP**
                                        980 N. Michigan Avenue, Suite 1610
                                        Chicago, IL 60611
                                        Telephone: (872) 263-1100
                                        Facsimile: (872) 263-1109
                                        sam@straussborrelli.com
                                        raina@straussborrelli.com

                                        Lynn A. Toops*
                                        Natalie A. Lyons*
                                        Ian R. Bensberg*
                                        **COHENMALAD, LLP**
                                        One Indiana Square, Suite 1400
                                        Indianapolis, IN 46204
                                        Telephone: (317) 636-6481
                                        ltoops@cohenmalad.com
                                        nlyons@cohenmalad.com
                                        ibensberg@cohenmalad.com

                                        J. Gerard Stranch, IV*
                                        Michael C. Tackeff*
                                        Andrew K. Murray*
                                        **STRANCH, JENNINGS &
                                        GARVEY, PLLC**
                                        223 Rosa L. Parks Avenue, Suite 200
                                        Nashville, TN 37203
                                        Telephone: (615) 254-8801
                                        gstranch@stranchlaw.com
                                        mtackeff@stranchlaw.com
                                        amurray@stranchlaw.com

                                        *Counsel for Plaintiff and the Putative Class*

                                        **\* Applications for admission
                                        *pro hac vice* forthcoming**

CLASS ACTION COMPLAINT
Page 17

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263-1109
straussborrelli.com

— **EXHIBIT A** —

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF PIERCE

MARIAH MEADE, on her own behalf and
on behalf of others similarly situated,

                Plaintiff,

    vs.

PROFUSION COSMETICS CORP.,

                Defendant.

Case No.: _____

CLASS ACTION COMPLAINT

EXHIBIT A

| Date | Subject Line |
| --- | --- |
| 12/24/23, 11:00 AM | 🎁 35% Off Sitewide - Sales end on 12/26 11:59 PM PST! 😱 🎄 |
| 12/24/23, 3:01 PM | 🎁 35% Off Sitewide - Sales end on 12/26 11:59 PM PST! 😱 🎄 |
| 12/26/23, 10:54 AM | 🎁 LAST DAY! 35% Off Sitewide - Sales end on 12/26 11:59 PM PST! 😱 🎄 |
| 12/26/23, 4:55 PM | 🎁 LAST DAY! 35% Off Sitewide - Sales end on 12/26 11:59 PM PST! 😱 🎄 |

CLASS ACTION COMPLAINT
EXHIBIT A – Page 1

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com